Todd M. Friedman, Esq.- State Bar #216752
Adrian R. Bacon, Esq.- State Bar # 280332
Meghan E. George, Esq.- State Bar #274525
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills CA 91367
Phone: (877) 206-4741
Fax: (866) 633-0228
Email: tfriedman@toddflaw.com
        abacon@toddflaw.com
        mgeorge@toddflaw.com
Attorneys for Plaintiff, ADAM KAVON

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM KAVON, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | **PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES** |
| vs. | **(Amount to Exceed $25,000)** |
| BMW OF NORTH AMERICA, LLC; | |
| Defendant. | |

## COMPLAINT

NOW COMES the Plaintiff, ADAM KAVON, by and through Plaintiff's attorney, LAW OFFICES OF TODD M. FRIEDMAN, P.C., and for Plaintiff's Complaint against, BMW OF NORTH AMERICA, LLC, alleges and affirmatively states as follows:

## PARTIES

1.      Plaintiff, ADAM KAVON ("Plaintiff"), is an individual who purchased subject vehicle in the State of California.

2. Manufacturer, BMW OF NORTH AMERICA, LLC ("Manufacturer" or "Defendant"), is a limited liability company, authorized to do business in the State of California and is engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Manufacturer is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships. Manufacturer does business in all counties of the State of California. Defendant BMW-NA, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 300 Chestnut Ridge Road in Woodcliff Lake, New Jersey.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant BMW of North America, LLC, regularly transacts substantial business in this district, are subject to personal jurisdiction in this district, and therefore is deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

5.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within California and throughout the United States

### BACKGROUND

6.     Plaintiff ADAM KAVON brings this action individually for himself and on behalf of all persons who purchased or leased in California certain vehicles equipped with uniform and uniformly defective battery systems designed, manufactured, distributed, warranted, marketed, and sold or leased by Defendant BMW Of North America, LLC as described below.

7.     On or about September 15, 2020, Plaintiff entered a lease agreement for a new 2021 BMW X5 ("BMW X5"), manufactured by Manufacturer, Vehicle Identification No. 5UXTA6C04M9D35662.

8.     This action is brought to remedy violations of law in connection with BMW's design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' battery systems have a serious design defect that causes the battery system to be unreasonably dangerous, due to debris in the manufacturing process of the Class Vehicles. As a result, the Plaintiff and members of the proposed class have been cautioned not to charge the battery under any circumstances, nor should they use the vehicle in "sport" mode. There is no recall for the defect, nor is there any fix offered by the Defendant.

9.     On information and belief, the battery system is manufactured in substantially the same manner in all Class Vehicles, and does not vary from vehicle to vehicle in its construction, operation, or control.

10. Plaintiff believes that the unreasonably dangerous and defective battery is dangerous to his health, and the safety of Plaintiff and others who may ride in his vehicle.

11. In consideration for the purchase of the Class Vehicles, Manufacturer issued and supplied to Plaintiff and the Class Members several written warranties, as well as other standard warranties fully outlined in the Manufacturer's Warranty Booklet.

12. On information and belief, prior to the manufacture and sale of the Class Vehicles, Defendant knew of the battery system defect through internal sources, testing, and consumer complaints, including when Class Members brought the Class Vehicle to Defendant for inspection. Yet despite this knowledge, Defendant failed to disclose and actively concealed the battery system defect from Class Members and the public, and continued to entice consumers to purchase the Class Vehicles without remedying the underlying extremely dangerous issues with the defective battery systems.

13. When Plaintiff, and other putative class members, complained about the defective and dangerous battery system, Defendant refused to remedy the system, informed Plaintiff there was no recall or fix available for the issue, and informed him that he should, under no circumstances, charge the battery or use the vehicle in "sport" mode. Based on Plaintiff's information and belief, Defendant knew all along that this problem was widespread, had no fix available, and nevertheless kept selling to consumers, like Plaintiff.

14. The defects listed below violate the express written warranties issued to Plaintiff by manufacturer, as well as the implied warranty of merchantability.

15.     Plaintiff brought the vehicle to seller and/or other authorized service dealers of manufacturer to attempt repair on the above referenced defects, but Defendant's failed to and were unable to remedy the underlying problem of the defective battery system, for which it stated there was no fix available.

16.     Plaintiff, and Class Members, were made to foot the cost of the cabin filter changes, which were repairs that fall outside of the Manufacturer's warranty, according to Defendant's representatives.

17.     Plaintiff, and class members, provided Manufacturer through Seller and/or other authorized dealers of Manufacturer sufficient opportunities to repair the vehicle.

18.     As a result of the Defendant's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the battery system defect, and Defendant has not provided a permanent remedy for this Defect. Furthermore, Plaintiff and the Class Members justifiably lost confidence in the Class Vehicles' reliability and said defects have substantially impaired the value of the Class Vehicles to Plaintiff and the putative class.

## The Battery System Defect

19.     On or about September 15, 2020, Plaintiff entered a lease agreement for a new 2021 BMW X5 ("BMW X5"), manufactured by Manufacturer, Vehicle Identification No. 5UXTA6C04M9D35662.

20.     On September 30, 2020, Plaintiff was notified by a BMW bulletin, that in Plaintiff's vehicle, as well as several other models, "Debris may have entered one or more of the hybrid battery cells during their production."

21.    As a result, the vehicles, and their drivers, were at risk of, as stated by BMW in their printed bulletin, "a short circuit, increasing the risk of fire or injury."

22.    However, even despite awareness of this vehicle defect, there was no repair or fix made available to owners of those defective vehicles.

23.    Instead of taking back customer's vehicles and putting them into newer, safer, vehicles, BMW instructed Plaintiff and all customers, in their bulletin, "Until the remedy is available, drivers will be instructed to not charge their vehicles. Drivers will also be instructed to not drive in manual mode, sport mode, and to not use the shift paddles."

## CLASS ALLEGATIONS

24.     Plaintiff brings this action for himself and on behalf of the Class Members. Plaintiff is informed and believe that, because of the defective battery systems, the Class Vehicles are dangerous to drive, put their drivers at risk of injury, fire, or death, as admitted by the Defendant.

25.    Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly situated individuals pursuant to California Code of Civil Procedure ("CCP") section 382.

26.    Plaintiff brings this class action on behalf of himself and all other similarly situated members of the proposed class (the "Class"), defined as follows:

**All persons or entities in the United States who are current or former owners and/or lessees of BMW vehicles equipped with the Electrical System: Propulsion System: Traction Battery (the "Nationwide Class"), including the 2020-2021 530e, 530e xDrive, 530e iPerformance and X3 xDrive30e and MINI**

**Cooper Countryman All4 SE, 2020 BMW i8, and 2021 330e, 330e xDrive, 745Le xDrive and X5 xDrive45e vehicles.**

27.    Excluded from the Class are: (1) BMW, any entity or division in which BMW has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

28.    In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above:

**<u>California Sub-Class:</u> All persons or entities in California who are current or former owners and/or lessees of BMW vehicles equipped with the Electrical System: Propulsion System: Traction Battery including the 2020-2021 530e, 530e xDrive, 530e iPerformance and X3 xDrive30e and MINI Cooper Countryman All4 SE, 2020 BMW i8, and 2021 330e, 330e xDrive, 745Le xDrive and X5 xDrive45 engine primarily for personal, family or household purposes, as defined by California Civil Code § 1791(a) ("the California Sub-Class")**

29. **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of various states. Plaintiff believes, and on that basis alleges, that thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Classes.

30. **Typicality:** The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, leased a Class Vehicle designed, manufactured, and distributed by Defendants in which the battery system was defective and there has been no remedy made available. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct, and is forced to remain in an unsafe and dangerous vehicle. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

31. As used herein, the term "Class Members" shall mean and refer to the members of the Classes described above.

32. Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

33. No violations alleged in this complaint are contingent on any individualized interaction of any kind between class members and Defendant.

34.    Rather, all claims in this matter arise from the identical, false, affirmative representations of the services, when in fact, such representations were false.

35.    **Existence and Predominance of Common Questions of Fact and Law:** There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

a.    Whether Defendant engaged in unlawful, unfair, or deceptive business practices in selling Class Products to Plaintiff and other Class Members;

b.    Whether Defendants made misrepresentations with respect to the Class Products sold to consumers;

c.    Whether the Class Vehicles and their batteries are defectively designed or manufactured such that they are not suitable for their intended use;

d.    Whether the fact that the Class Vehicles suffer from a Battery Defect would be considered material by a reasonable consumer;

e.    Whether the fact that the Class Vehicles suffer from a defect that could cause fire or injury, would be considered material by a reasonable consumer;

f.    Whether Defendants profited from both the sale of the vehicles that had battery defects;

g.    Whether Defendants were aware of Battery Defect before the Class Vehicles were first sold to consumers;

h. Whether Defendants continued to sell Class Vehicles to consumers after they were aware of the Battery Defect;

i. Whether Defendants violated California Bus. & Prof. Code § 17200, et seq.

j. Whether Defendants breached the warranty provided to Class Members;

k. Whether Defendant breached the implied warranty provided to Class Members;

l. Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

m. Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

n. The method of calculation and extent of damages for Plaintiff and Class Members.

36.    The claims of Plaintiff are not only typical of all class members, they are identical.

37.    All claims of Plaintiff and the class are based on the exact same legal theories. Plaintiff has no interest antagonistic to, or in conflict with, the class. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff bought Class Products from Defendants during the Class Period.

38.    **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

39. **Predominance and Superiority**: Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication

40. Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff's claims are typical of all Class Members as demonstrated herein.

41. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class. Common questions will predominate, and there will be no unusual manageability issues.

///

///

///

///

# COUNT I
## BREACH OF WRITTEN WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
### (On Behalf Of The Nationwide Class, or Alternatively, The California Sub-Class)

42. Plaintiff realleges and incorporates by reference as fully set forth herein, paragraphs 1-41 of this Complaint.

43. Plaintiff is a purchaser of a consumer product who received the BMW X5 during the duration of a written warranty period applicable to the BMW X5 and who is entitled by the terms of the written warranty to enforce against Manufacturer the obligations of said warranty.

44. Manufacturer is a person engaged in the business of making a consumer product directly available to Plaintiff.

45. Seller is an authorized dealership/agent of Manufacturer designed to perform repairs on vehicles under Manufacturer's automobile warranties.

46. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section, 2301 et. Seq. ("Warranty Act") is applicable to Plaintiff's Complaint in that the Class Vehicles were manufactured, sold and purchased after July 4, 1975, and costs in excess of ten dollars ($10.00).

47. Defendants expressly warranted that the Class Vehicles were of high quality and, at minimum, would actually work properly. Defendants also expressly warranted that they would repair and/or replace defects in material and/or

workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

48.     Plaintiff and all Class Members' purchase of the Class Vehicles were accompanied by written factory warranties for any non-conformities or defects in materials or workmanship, comprising an undertaking in writing in connection with the purchase of the Class Vehicles, to repair the Class Vehicles, or take other remedial action free of charge to Plaintiff and the Class Members with respect to the Class Vehicles in the event that the Class Vehicles failed to meet the specifications set forth in said undertaking.

49.     Said warranties were the basis of the bargain of the contract between the Plaintiff and Class Members and Manufacturer for the sale of the Class Vehicles to Plaintiff and the Class Members.

50.     Said purchase of the Class Vehicles was induced by, and Plaintiff and the Class Members relied upon, these written warranties.

51.     Plaintiff and the Class Members have met all of their obligations and preconditions as provided in the written warranties.

52.     Defendants breached this warranty by selling to Plaintiff and the Class Members the Class Vehicles with known battery problems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly, and could possibly cause a fire or injury.

53.    As a direct and proximate result of Manufacturer's failure to comply with its express written warranties, Plaintiff and the Class Members have suffered damages and, in compliance with 15 U.S.C. §2310(d), Plaintiff is entitled to bring suit for such damages and other equitable relief.

## COUNT II
## BREACH OF IMPLIED WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
### (On Behalf Of The Nationwide Class, Or Alternatively, The California SubClass)

54.    Plaintiff realleges and incorporates by reference as through fully set forth herein, paragraphs 1-53 of this complaint.

55.    The Class Vehicles purchased by Plaintiff and the Class Members were subject to an implied warranty of merchantability as defined in 15 U.S.C. §2301(7) running from the Manufacturer to the intended consumer, Plaintiff and the Class Members herein.

56.    Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff and the Class Members.

57.    Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Manufacturer has entered into a contract in writing within ninety (90) days of purchase to perform services relating to the maintenance or repair of a motor vehicle.

58.     Pursuant to 15 U.S.C. §2308, the Class Vehicles were impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and thereby fit for the ordinary purpose for which the Class Vehicles were intended.

59.     The Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

60.     The above described defects in the Class Vehicles render the Class Vehicles unfit for the ordinary and essential purpose for which the Class Vehicles were intended.

61.     As a result of the breaches of implied warranty by Manufacturer, Plaintiff has suffered and continues to suffer various damages.

### COUNT III
### BREACH OF IMPLIED WARRANTY
### (Song-Beverly Act)
### (On Behalf of the The California SubClass)

62.     Plaintiff incorporates by reference each allegation set forth above.

63.     The Class Vehicles purchased by Plaintiff and Class Members were subject to an implied warranty of merchantability as defined in Cal. Civ. Code §1790 running from the Manufacturer to the intended consumer, Plaintiff and the Class Members herein.

64.     Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff.

65.     Manufacturer is prohibited from disclaiming or modifying any implied warranty under Cal. Civ. Code §1790.

66.     Pursuant to Cal. Civ. Code §1790, the Class Vehicles were impliedly warranted to be fit for the ordinary use for which the Class Vehicles were intended.

67.     The  Class Vehicles were warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the vehicle contained in the contracts and labels.

68.     The above described defects in the Class Vehicles caused it to fail to possess even the most basic degree of fitness for ordinary use.

69.     As a result of the breaches of express warranty by Manufacturer, Plaintiff has suffered and continues to suffer various damages.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**(Song-Beverly Act)**
**(On Behalf of The California SubClass)**

70.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

71.     Plaintiff brings this Count on behalf of the California Sub-Class.

72.     Plaintiff and the other Class Members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

73. The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

74. BMW is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791(j).

75. Plaintiff and the other Class Members bought/leased new motor vehicles manufactured by Defendants.

76. Defendants made express warranties to Plaintiff and the other Class Members within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

77. As set forth above in detail, the Class Vehicles are inherently defective in that the Battery Defects in the Class Vehicles substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers like Plaintiff and the other Class Members.

78. As a result of Defendants' breach of their express warranties, Plaintiff and the other Class Members received goods whose dangerous condition substantially impairs their value to Plaintiff and the other Class Members. Plaintiffs and the other Class Members have been damaged as a result of, inter alia, the diminished value of Defendant's products, the products' malfunctioning, and the nonuse of their Class Vehicles.

79. Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiff and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

80. Pursuant to California Civil Code § 1794, Plaintiff and the other Class Members are entitled to costs and attorneys' fees.

## COUNT V
## VIOLATION OF UNFAIR BUSINESS PRACTICES ACT
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
### (On Behalf of The California Subclass)

81.    Plaintiff incorporates by reference each allegation set forth above.

82.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.   Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.   A plaintiff is required to provide evidence of a causal connection between a defendants' business practices and the alleged harm--that is, evidence that the defendants' conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the Defendant's conduct created a risk of harm.   Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

83.    California Business & Professions Code § 17200 prohibits any "unfair . . business act or practice."   Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.   There were reasonably available alternatives to further Defendant's

legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

84. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

85. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to knowingly sell defective Class Vehicles, with no remedy or fix available for the known defect. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Proposed Nationwide Class and Sub-Class.

86. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products were of a certain luxury value and price, in order to induce them to spend money on said Class Products. In fact, knowing that Class Products were not of a suitable quality to be sold, due to the defective battery system, Defendant unfairly

profited from their sale.  Thus, the injury suffered by Plaintiff and the members of the Sub-Class is not outweighed by any countervailing benefits to consumers.

87.     Finally, the injury suffered by Plaintiff and members of the Sub-Class is not an injury that these consumers could reasonably have avoided.  After Defendant falsely represented the quality of the Class Products, Plaintiff and class members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and class members that the Class Products were in a permanently defective condition, due to the defects with the battery system. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the class vehicles.  Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

88.     Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

<strong>FRAUDULENT</strong>

89.     California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

90.     The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

91.     Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products under the basic assumption that they were of a suitable quality and merchantable condition, when in fact they were not suitable to be sold, and were being sold with an inherent defect in the battery systems. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

92.     As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products as being in a merchantable condition, and thus falsely represented the Class Products.

93.     Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

///

///

# UNLAWFUL

94.     California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

95.     As explained above, Defendant deceived Plaintiff and other Class Members by representing the Class Products of a certain, non-defective, quality, and unfairly deceived Plaintiff and other Class members by representing that that these products were suitable for sale, when they knew that they were not.

96.     Defendant used false misrepresentations to induce Plaintiff and Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.  Had Defendant not falsely misrepresented the quality of the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

97.     These representations by Defendant is therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

98.     Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an

order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

### COUNT V
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
**(On Behalf of The Nationwide Class Or, Alternatively, The California Subclass)**

99.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

100.    Plaintiff brings this claim on behalf of herself and on behalf of the members of the Nationwide Class or, alternatively the California Sub-Class.

101.    Every contract in California contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

102.    Plaintiff has complied with and performed all conditions of the purchase contract.

103.    Defendants breached the covenant of good faith and fair dealing by, inter alia, failing to notify Plaintiffs and Class Members of the Battery Defects in the Class Vehicles, and failing to fully and properly repair this defect.

104.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

# **PRAYER FOR RELIEF**

a)  Plaintiff requests that this Court award Plaintiff and the Class all forms of relief, including without limitation, both statutory and actual damages, attorneys' fees and costs, equitable relief, and all other forms of relief that this Court finds due and proper.

b)  For an order certifying this action as a class action;

c)  For an order appointing Plaintiff as representative of the Class and her counsel of record as Class counsel;

d)  For an award of actual, general, special, incidental, statutory, compensatory and consequential damages on claims brought under the California Unfair Competition Law, breach of express and implied warranties under all relevant statutes, and breach of the covenant of good faith and fair dealing and in an amount to be proven at trial;

e)  For an order requiring Defendants to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate

///

///

///

///

**PLAINTIFF HEREBY REQUESTS A JURY TRIAL IN THIS MATTER.**

Date: October 23, 2020          LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By:      */s Todd M. Friedman*

          TODD M. FRIEDMAN, ESQ.
          Attorneys for Plaintiff
          **Adam Kavon**